DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from the grant of summary judgment issued by the Lucas County Court of Common Pleas in favor of appellees and against appellants regarding the issuing of revenue bonds for the construction of parking garages and other facilities in Westlake, Ohio. Because we conclude that the trial court properly granted summary judgment to appellees, we affirm.
 {¶ 2} Appellants, Westfield Franklin Park Mall, LLC, and Westfield Great Northern Mall, LLC, filed a declaratory judgment action in October 2003 against appellees, Toledo/Lucas county Port Authority ("TPA"), the city of Westlake, and developer, Crocker Park, LLC for alleged statutory and constitutional violations involving the financing of construction of parking garages in Westlake, Ohio, Cuyahoga County. The parking garages were a part of an 86 acre complex which was to include residential housing, professional offices, retail shops, and restaurants. The project was created and covered by a contract ("Cooperative Agreement") among the TPA, Westlake, and Crocker Park. The Cooperative Agreement provided that TPA would act as an agent for Westlake, would lease the parking garage property for 42 years, and would issue revenue bonds to finance the project. TPA was also to receive additional yearly fees relating to the transaction. To pay for the revenue bonds, Westlake levied special assessments as a lien on the property, to be paid by Crocker Park. A "Reserve Fund" and an "Additional Municipal Reserve Fund," both administered by separate trustees, were established to make payments on the assessments/bonds in the event of default by Crocker Park. None of the financing relied on the use of general public tax money.
 {¶ 3} In addition, the Cooperative Agreement provided that the TPA would have total control of the property during the lease period and, should there be a failure to repay the assessment/bonds, Westlake would "consider" appropriating funds to cover any deficiency for a particular calendar year. A decision not to appropriate money by Westlake would not, however, be considered a default as to the Cooperative Agreement. Furthermore, the Westlake "consideration" requirement was to terminate upon December 31, 2004, the expected completion date of a specific portion of the Crocker Park project.
 {¶ 4} The trial court ultimately denied appellants' motion for summary judgment and granted summary judgment to appellees. The court ruled that the TPA did not act beyond the scope of its authority and the Cooperative Agreement did not violate Article VIII, Section 6 or Section 13 of the Ohio Constitution.
 {¶ 5} Appellants now appeal from that judgment, setting forth the following four assignment of error:
 {¶ 6} "I. The Trial Court erred as a matter of law by holding that the Toledo-Lucas County Port Authority can issue special assessment revenue bonds as an agent of the City of Westlake under Ohio Revised Code § 4582.17(B) in circumstances where Westlake could not itself do so.
 {¶ 7} "II. The Trial Court erred as a matter of law by holding that the Financing Scheme does not violate the Ohio Constitution's Article VIII, § 6 Prohibition against a public entity lending aid and/or credit to a private entity.
 {¶ 8} "III. The Trial Court erred as a matter of law by holding that the Financing Scheme falls within the industry and commerce exception of Article VIII, § 13 of the Ohio Constitution.
 {¶ 9} "IV. The Trial Court erred as a matter of law by allowing the Toledo-Lucas County Port Authority to exercise powers beyond those granted to it by its creating governmental bodies."
 {¶ 10} We will address appellants' assignments of error together. Appellants essentially argue that the trial court erred in determining that the Port Authority had properly exercised its powers and had not violated the Ohio Constitution.
 {¶ 11} Chapter 4582 of the Ohio Revised Code delineates the powers, duties, and structure under which a port authority operates. At the time the Cooperative Agreement was entered into, R.C. 4582.06(O) provided that a port authority has the power to do all acts necessary to carry out its authorized purposes. R.C. 4582.01(B) defined "authorized purposes" of a port authority to include "activities which enhance, foster, aid, provide, or promote transportation, economic development, housing, recreation, education, governmental operations, culture, or research within the jurisdiction of the port authority," as well as, activities "authorized by Sections 13 and 16 of Article VIII, Ohio Constitution."
 {¶ 12} Among the many actions authorized under R.C. Chapter 4582, a port authority may enter into contracts with corporations or any other municipalities in the state as necessary to exercise any of its powers. R.C. 4582.17(A). It may also issue revenue bonds, lease property, create trust agreements, or loan money in furtherance of authorized purposes. See R.C. 4582.06.[1]
 {¶ 13} After a careful and thorough review of the record and applicable law, we cannot say that appellants have demonstrated that the TPA acted beyond the scope of their authority in entering into the agreements with Westlake and Crocker Park. Although creative in its conception, the Cooperative Agreement simply permits the parties involved to take advantage of the activities allowed under R.C. Chapter 4582. We must now determine whether the TPA's actions were for authorized purposes.
 {¶ 14} Article VIII, Section 6 of the Ohio Constitution, in relevant part prohibits a port authority's actions as follows:
 {¶ 15} "No laws shall be passed authorizing any * * * township, by vote of its citizens, or otherwise, to become a stockholder in any joint stock company, corporation, or association whatever; or to raise money for, or loan its credit to, or aid of, any such company, corporation, or association: * * *."
 {¶ 16} The purpose behind Article VIII, Section 6 of the Ohio Constitution is to prohibit private interests from tapping into public funds at the taxpayers' expense. C.I.V.I.C. Group v. Warren (2000),88 Ohio St.3d 37, 40.
 {¶ 17} Nevertheless, this section has been tempered by the passage of Article VIII, Section 13 of the Ohio Constitution which provides exceptions to Section 6, including if the purpose of a port authority contract is for commerce and "to create or preserve jobs and employment opportunities, [or] to improve the economic welfare of the people of the state." Article VIII, Section 13 states that, as long as public tax moneys are not used as a guarantee or payment, the port authority is authorized:
 {¶ 18} "to acquire, construct, enlarge, improve, or equip, and to sell, lease, exchange, or otherwise dispose of property, structures, equipment, and facilities within the State of Ohio for industry,commerce, distribution, and research, to make or guarantee loans and to borrow money and issue bonds or other obligations to provide moneys for the acquisition, construction, enlargement, improvement, or equipment, of such property, structures, equipment and facilities. Laws may be passed to carry into effect such purposes and to authorize for such purposes the borrowing of money by, and the issuance of bonds or other obligations of, the state, or its political subdivisions, taxing districts, or public authorities, its or their agencies or instrumentalities, or corporations not for profit designated by any of them as such agencies or instrumentalities, and to authorize the making of guarantees and loans and the lending of aid and credit * * *." (Emphasis added.)
 {¶ 19} The term "commerce" has been expanded to mean "[t]he exchange of goods, productions, or property of any kind," and includes the "service industries that for some time have formed a substantial part of our state's and nation's economies." State ex rel. Bd. of Cty. Commrs.v. Zupancic (1991), 62 Ohio St.3d 297, 301, citing Black's Law Dictionary (6 Ed. 1990) 269. Article VIII, Section 13 further states that the "powers herein granted shall be in addition to and not in derogation of existing powers of the state or its political subdivisions, taxing districts, or public authorities, or their agencies or instrumentalities or corporations not for profit designated by any of them as such agencies or instrumentalities." Therefore, a port authority or municipality may, in fact, use any of its powers to lend aid to a private entity in furtherance of commerce, as long as no public tax moneys are obligated.
 {¶ 20} Appellants essentially argue that the Ohio Constitution absolutely prohibits a port authority from lending aid to a private party for any purpose. This argument is without merit. The real issue here is whether the aid to Crocker Park, a private party, constitutes a permissible commerce exception under Article VIII, Section 13.
 {¶ 21} The Crocker Park project is to include, in addition to the already completed parking garages, new housing, professional offices, retail stores, and other commercial opportunities. We cannot conceive of an interpretation which would deny that at least one purpose of the project is "to create or preserve jobs and employment opportunities" and "to improve the economic welfare of the people of the state." The revenue bonds issued by the TPA are to be repaid by special assessments paid by Crocker Park only; therefore, no general tax moneys are obligated. Two back-up funds exist to provide for payments in the event that Crocker Park defaults on its payments. In addition, the special assessments constitute a lien on the property, which would apply to any future purchasers should the property have to be sold. Furthermore, contrary to appellants' suggestions, since a port authority may lease property, whether the property is owned by the TPA is of no consequence to its ability to enter into the Cooperative Agreement.
 {¶ 22} Finally, appellants' concern over the "consideration clause" is simply without merit. The clause related to Westlake's agreement to "consider" paying the bonds should Crocker Park default on its payments is not a legally binding obligation to actually pay the bonds, and, by this time has, likely expired. According to Zupancic, the project meets and exceeds the "commerce" exception of Article VIII, Section 13. Therefore, since TPA did not act beyond its authority and the agreements do not violate the Ohio Constitution, the trial court did not err in granting summary judgment.
 {¶ 23} Appellants' four assignments of error are not well-taken.
 {¶ 24} The judgment of the Lucas County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4, amended 1/1/98.
Pietrykowski, J. Skow, J. Parish, J. Concur.
[1] The parties have cited and referred to the version of R.C. 4582.06
which went into effect on January 1, 2004. At the time that the Crocker Park Cooperative Agreement was created and eventually placed into effect (2003), the sections of R.C. 4582.06 were set out and stated differently. The essence of the provisions, however, are the same: that the port authority may, among other numerous actions, lease, maintain, or furnish property, or loan money in furtherance of any authorized purpose or "an activity contemplated by Section 13 or 16 of Article VIII, Ohio Constitution, [which] shall be made in such manner and subject to such terms and conditions as may be determined by the board of directors in its discretion." See R.C. 4582.06(A)-(F).